The opinion of the Court was delivered by
Ward law, Ch.
This is an appeal from the refusal of Chancellor Dargan to grant leave to the plaintiff to file a bill of review, or a bill in the nature of a bill of review, of a decree of Chancellor Johnston, in 1851.
The original bill was filed in 1842, by the plaintiff, against William F. Downs, Sarah Downs and others, to set aside for fraud a decree obtained by Sarah Downs, against William F. Downs in 1839, for $>15,317 10. The defendants answered, denying the fraud, and died before the hearing, viz r Sarah Downs, April 24,1844, and William F. Downs, Sept. 11,1847; and the bill was revived against their representatives. The claim of the plaintiff, as creditor of William F. Downs, by judgment at the filing of the bill, was overpaid on October 23,1847, and his other unsatisfied claims as assignee of the subsequent *365 judgments of the Commercial Bank, and of himself as partner in the factory of Simpson & Downs, amount to $6,376 51, with interest from July 1, 1852. The whole fund, subject to distribution among the creditors of Wm. F. Downs, is $4,541 80, with interest from July 1, 1852.
The decree of Sarah Downs against William F. Downs, was founded on a claim that he had received the rents and profits of certain lands and negroes devised to her for life, with remainder to him. In his answer to her bill, he admitted his liability; and the amount of his indebtedness was ascertained and reported by the Commissioner, on the testimony of two respectable witnesses.
This decree was assailed by the plaintiff, on various grounds, such as, that defendant was not technically trustee of his mother, that the relation between them and their conduct to each other implied gift of the profits on her part, and that the amount of the account was so enormous as to demonstrate fraud. All of these grounds were overruled by the decree of 1851.
The application for review of Chancellor Johnston’s decree proceeds entirely on the ground that William F. Downs was charged in the Commissioner’s report, which was the basis of the decree in Sarah Downs vs. William F. Downs, with rent for more land than was included within the premises devised to Sarah Downs for life.
The affidavit of the plaintiff alleges, that William F. Downs was charged with rent on 200 cultivated acres of land devised to Sarah Downs for life, whereas the whole arable land of the plantation did not exceed one-half of this sum of acres, and that of the portion in actual cultivation, for which rent was charged, 16 acres belonged to William F. Downs himself; and that plaintiff, until after the decree, supposed that the whole arable land belonged to the parcel of land devised to Sarah Downs for life, and discovered the contrary by coming into possession of certain conveyances to William F. Downs, from the distributees of Lydall and Mildred Allen in 1818, 1827 and 1837. I infer from the names of these grantors, although the fact is not defi *366 nitely stated in the Commissioner’s report, that these grantors were the daughter Mildred, with her husband Lydall and children, of the testator Jonathan Downs.
The plaintiff appeals from the decree dismissing his petition, on the ground that his affidavit set forth newly discovered evidence, material, important, and not cumulative, which he could not have produced before the decree of 1851, by any possible diligence.
A bill of review, or a bill in the nature of a bill of review? cannot be filed without the previous leave of the Court. To obtain such leave, the applicant must satisfy the Court, by his affidavit or otherwise, that new matter, which might probably have occasioned a different determination, has. been newly discovered by him, which could not be produced for use when the decree was made. 3 Dan. C. P. 1688; Mitf. 94. It must be shown that the new matter is so material, that it would entitle the petitioner to a decree, or at least would raise a question of such difficulty as to make a determination in his favor very probable. Dan. C. P. 1734; Story Eq. Pl. 414; Ord vs. Noel, 6 Madd. 127. It is not enough that the new matter came to the knowledge of the party after the fit time for use of it, but he must shew that he could not have acquired knowledge of the fact in time for effective use by the exercise of reasonable diligence. Lord Eldon, in Young Keighty, 16 Ves. 350, says, the question always* is not what the petitioner knew, but what, using reasonable diligence, he might have known.
On the present application, the plaintiff fails in several particulars.
In the first place, he does not exhibit new matter which would probably produce a reversal of the decree of 1851. All of the important elements of fraud in the decree of Sarah Downs vs. Wm. F. Downs were considered and overruled in the decree of 1851. The whole effect of his additional testimony is to show that the decree of Sarah Downs vs. W. F. Downs is for too large an amount; but unless the excessive sum of rents on arable lands, allowed in this decree, would serve to reduce the sum recovered about three-fourths, or to annul it altogether *367 on the ground of express fraud, the plaintiff could not be profited by his alleged new matter. It is conceded that the plaintiff could not reach the assets in controversy by simple abatement of the judgment for rents allowed to Sarah Downs for lands not belonging to her for life; and relief to the plaintiff must depend on setting aside the judgment altogether. But after the principal grounds of express and annulling fraud have been overruled, it would be too' strong an exercise of discretion- to hold that the decree should be void for the whole, because part of the aggregate was disputable. It is not suggested, nor is there room for supposing, that the witnesses examined before the Commissioner to fix the value of the rent, were suborned to perjury by Sarah or William Downs, or that their over estimate of the land in cultivation proceeded from other motive than honest mistake. It may be true, that if William F. Downs, knowing the extent of his mother’s land, and of his own, permitted the witnesses to testify in mistake of the extent of the respective tracts of his mother and himself, his silence, when he should' have spoken, might have constituted fraud on his part. But there is no proof of any complicity in any supposed fraud of Sarah Downs and the witnesses. The portion of land in cultivation, probably supposed to belong to Sarah Downs’ estate, which in fact belonged to Wm. F. Downs, is only sixteen acres, by estimate, and it lay so near the boundary between these proprietors, that all parties, including Wm. F. Downs, might have been honestly mistaken as to the inclusion of this portion in one or the other of the tracts. If the witnesses were honestly mistaken in their estimate of the land in cultivation, and not misled by suggestion or concealment on the part of William F. Downs, the decree of Sarah against William Downs might be liable to abatement, but surely not to entire vacation. We do not perceive that the new matter suggested by the petitioner would have probably produced a determination that the decree of 1839 was absolutely fraudulent and utterly void; and for the reasons suggested, mere abatement of the sum recovered would not profit the petitioner.
*368 Again; the additional matter suggested by the petitioner can hardly be considered as newly discovered. The subject of controversy in the suit ■ was in this particular the excessive allowance of rents. It was admitted on the trial that William P. Downs owned land adjoining the portion devised to his mother for her life. The tract devised to the mother was specified by the number of acres in the will of Jonathan Downs. The interest of the plaintiff required him to ascertain the limits of the tracts devised to Sarah Downs, but he had no concern in the limits or mode of acquisition of William P. Downs’ land, except as this contiguous tract defined the lands of Sarah Downs. It made no difference to him whether William F.' Downs acquired his own land by purchase or descent, except as the mode or instrument of acquisition might limit the extent of the mother’s lands; and it is an abuse of speech to say that petitioner newly discovered the extent of Mrs. Downs’ lands, because he more accurately ascertained the extent of Mr. Downs’ lands. It does not appear, although the attention of plaintiff’s counsel was directed to the point on the trial, as is apparent from the admission in evidence of the contiguity of the tracts, that the plaintiff made any effort by survey or otherwise to settle the boundaries of the tracts known to be adjoining of Sarah and Wm. P. Downs. The discovery of the conveyances to Wm. P. Downs in this case is not of equal importance to the recuperation of the bill of sale of the vendor in Hinson vs. Pickett, 2 Hill, Ch. 351, where review on this account was refused. In ex parte Vandersmissen, 5 Rich. Eq. 519, a bill of review was allowed where the evidence might have been produced at the original trial, if the counsel had been very astute and diligent; but there the new evidence was in a foreign language, it was decisive of the case, and the apparent negligence of counsel was excused by the change of their members. The case itself may be liable to some criticism. It at least admonishes us of the difficulty of laying down inflexible rules as to re-hearings and bills of review.
I have, to a great extent, anticipated the strongest objection *369 to review in this case, that the petitioner has not shown the exercise of due diligence in procuring the new testimony. The evidence alleged to be newly discovered is of a fact directly in issue in the former trial — is in its nature merely cumulative of the actual evidence then used, and it might easily have been then brought to light by proper diligence. No attempt was made at or before the trial to obtain from the heirs or representatives of Jonathan, Sarah or William F. Downs the deeds or plats exhibiting the titles of the respective parties. The same witnesses who now give testimony of error in the estimates of the cultivated-lands, were examined on the original trial on the part of the plaintiff, and might then have been constrained by searching examination to give all the information which they now in some sort volunteer.
We are of opinion that the petition of plaintiff was properly refused under the circumstances of this case.
It is therefore ordered and decreed that the appeal be dismissed.
Johnston, Dunkin and Dargan, CC., concurred.

Appeal dismissed.